■ HIGHLAND SAND & GRAVEL, INC., Respondent, v JUNE SQUICCIARINI, Defendant and Third-Party Plaintiff-Appellant. MARTIN SQUICCIARINI, Third-Party Defendant-Respondent. [709 NYS2d 91] —In an action, *inter alia*, for a judgment declaring the plaintiff's right to delivery of the defendant's stock certificate with restrictive legend, the defendant appeals from (1) so much of an order of the Supreme Court, Orange County (Slobod, J.), dated March 23, 1998, as denied that branch of her motion which was for summary judgment dismissing the complaint, and granted partial summary judgment to the plaintiff on the declaration, and (2) so much of an order of the same court, dated July 21, 1998, as, upon reargument, granted partial summary judgment to the plaintiff dismissing her second and third counterclaims and the second and third causes of action contained in the third-party complaint. The

appeal from the order dated March 23, 1998, brings up for review so much of the order dated July 21, 1998, as, upon reargument, adhered to its original determination granting the plaintiff summary judgment on the declaration (see, CPLR 5517 [b]).

Ordered that the appeal from the order dated March 23, 1998, is dismissed, without costs or disbursements, as that order was superseded by the order dated July 21, 1998, made upon reargument; and it is further,

Ordered that the order dated July 21, 1998, is affirmed insofar as appealed from and reviewed, without costs or disbursements.

The defendant, June Squicciarini, is the widow of Frank Squicciarini, who was a one-half shareholder of the plaintiff corporation along with his brother, the third-party defendant, Martin Squicciarini. Pursuant to a shareholder's agreement executed by the brothers (hereinafter the agreement), the corporation was obligated to purchase a deceased shareholder's shares for an agreed price of $500,000, to be paid in monthly installments. Pursuant to a "Certificate of Agreed Value", which was annexed to the agreement, the corporation was then valued at one million dollars. The agreement further provided that the corporation had the option of paying any remaining balance of the purchase price at any time without penalty, and that, should the corporation be sold at any time prior to 1999, then the purchase price of the deceased shareholder's stock would be modified to reflect a price equal to one-half of the sale price of the corporation.

Frank Squicciarini died in November 1984. Thereafter, the corporation made installment payments to the defendant until the summer of 1995, at which time it had made payments totaling approximately $420,000. The corporation then sought to pay the defendant the remaining sum of $80,000. However, the defendant refused to endorse Frank's stock certificate for delivery to the corporation and contended that the final price of the stock could not be determined since it was not yet 1999.

Summary judgment was properly granted to the corporation. "[A] contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed" (Morlee Sales Corp. v Manufacturers Trust Co., 9 NY2d 16, 19; see also, Breed v Insurance Co., 46 NY2d 351, 355). "Thus, 'clear, complete writings should generally be enforced according to their terms'" (Matter of Wallace v 600 Partners Co., 86 NY2d 543, 548, quoting W.W.W. Assocs. v Giancontieri, 77 NY2d 157, 160). In the absence of any ambigu-

ity, there are only documents to interpret, and the issue is one of law to be determined by the court (*see, Olson Enters. v Agway, Inc.,* 55 NY2d 659, 661; *Lui v Park Ridge,* 196 AD2d 579, 580; *Stanita Realty Corp. v Hughes Aircraft Co.,* 116 AD2d 567).

Although the agreement provided that the defendant would be entitled to additional compensation in the event that the corporation was sold for more than one million dollars before 1999, it did not permit her to hold on to her deceased husband's shares as collateral for such an eventuality where, as here, she was offered and paid the full, agreed value of $500,000 prior to 1999.

The corporation rightfully exercised its option to make a lump sum payment to the defendant. Its failure to pay the balance by installments does not give rise to a cause of action against it for breach of contract. Moreover, the defendant's allegations with respect to psychological injuries constitute nothing more than an alleged breach of contract, and as such do not give rise to tortious liability (*see generally, Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 389; *see also, Bellevue S. Assocs. v HRH Constr. Corp.,* 78 NY2d 282, 294-295; *Erdheim v Matkins,* 259 AD2d 515). Accordingly, the court properly dismissed the defendant's second and third counterclaims and the second and third causes of action in the third-party complaint. Santucci, J. P., Joy, Thompson and Goldstein, JJ., concur.